900 F.2d 257
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charlie THOMPSON, a/k/a Big Red, Defendant-Appellant.
 No. 89-5225.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Feb. 26, 1990.
Decided: April 5, 1990.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Norwood Carlton Tilley, Jr., District Judge. (CR-88-152-G)
 Larry Bronson, Bayonne, N.J., for appellant.
 Robert H. Edmunds, Jr., United States Attorney; David B. Smith, Assistant United States Attorney, Greensboro, N.C., for appellee.
 M.D.N.C.
 AFFIRMED.
 Before PHILLIPS, SPROUSE and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Charlie Thompson appeals from a judgment of the district court sentencing him to 235 months in prison, fines, and five years supervised release for conspiracy to possess with intent to distribute cocaine hydrochloride. 21 U.S.C. Secs. 841(a)(1), 841(b)(1)(A), 846. The trial court found that he was a supervisor in the drug conspiracy and therefore enhanced his base level offense, pursuant to the United States Sentencing Commission Guidelines Sec. 3B1.1(b). 18 U.S.C. Sec. 3553. Thompson argues that there was insufficient evidence to support the enhancement. We affirm.
 
 I.
 
 2
 Before sentencing Thompson contended that he was not a supervisor or organizer, and the district court conducted a hearing to resolve this factual issue. Although there is some conflict in the evidence, the government clearly established that Thompson supplied cocaine to various distributors and made trips to Miami and New York to obtain the drug.
 
 
 3
 The government presented the testimony of two co-defendants in the case. The first, Benjamin Franklin Washington, testified that he sold cocaine purchased at Thompson's farm. Washington described how Thompson would give him the cocaine or send "Bone," Jeter, or other persons to a tobacco barn to retrieve the drug. Washington also stated that he and Thompson made four trips to Florida to procure cocaine; that Thompson made successful buys during the first three of these trips; and that Thompson paid him in cash or in cocaine for his assistance. Thompson and Washington were accompanied by individuals referred to as "Red" and "Rabbit" on the first two trips and by "Rabbit" and James on the third trip. In 1988, Washington and Thompson drove to New York City to buy cocaine. Thompson brought a suitcase which he told Washington contained $250,000 dollars. They travelled in two cars, accompanied by Washington's wife, another woman, a different James, Steve Weldon, and Billy Patrick.
 
 
 4
 Patrick testified at the sentencing hearing that he and Eugene Jeffries made about twenty trips to Thompson's farm to obtain cocaine for Washington. They gave Thompson the money for the drug. Sometimes, they received the cocaine from June, Jeter, or an unidentified third person. Patrick also described making several trips to New York with Thompson, Washington, and Weldon. They were joined on different occasions by Washington's wife, the second James, Veronica, and Slade. On one excursion, Patrick said the party carried sophisticated weapons.
 
 II.
 
 5
 Section 3B1.1(b) of the Guidelines provides for a three point increase in a defendant's offense level if the trial court finds that the defendant was a manager or supervisor and the criminal activity involved five or more participants or was otherwise extensive. As the proponent of enhancement, the government bears the burden of proving applicable facts by a preponderance of the evidence. United States v. Urrego-Linares, 879 F.2d 1234, 1238-39 (4th Cir.), cert. denied, 110 S.Ct. 346 (1989). Thompson asserts that the evidence does not support the conclusion that he was criminally responsible for the conduct of the individuals described above. But the district court found:
 
 
 6
 From the evidence involved, Mr. Thompson was the person who provided the money--with the exception of one time when several people had envelopes on the trip to Florida. Mr. Thompson was the one who paid people for going; Mr. Thompson was the one who provided weapons in New York, provided the Uzzi submachine gun to Mr. Patrick.
 
 
 7
 The Court finds from the testimony of Mr. Washington and Mr. Patrick that Mr. Thompson was an organizer of the endeavor; that there were people who worked directly with Mr. Thompson in the Haw River area who were identified as being there and following Mr. Thompson's orders and procuring and bringing cocaine on several occasions.
 
 
 8
 Jeter, "Bone," "Rabbit," and Red were identified as having been with Mr. Thompson on trips, two different Jameses, and Mr. Washington.
 
 
 9
 So the Court would find that Mr. Thompson is an organizer and a supervisor....
 
 
 10
 Because the district court's finding turned on a factual determination, we review it under a clearly erroneous standard. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989). We find no error under this standard. After a careful examination of the record, we are persuaded that the government established by a preponderance of the evidence that Thompson was a supervisor as contemplated by guideline Sec. 3B1.1(b).
 
 
 11
 We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and oral argument would not aid the decisional process.
 
 
 12
 AFFIRMED.